**Commonwealth of Kentucky, CITY OF DANVILLE, Appellant,**

v.

**Minnie Graham DAWSON, Appellee.**

Court of Appeals of Kentucky.

May 9, 1975.

Ed W. Hancock, Atty. Gen., Kenneth A. Howe, Jr., Asst. Deputy Atty. Gen., Frankfort, J. Thomas Hensley, Hensley & Smith, Danville, William W. Pollard, Asst. Atty. Gen., for appellant.

James F. Clay, Jr., Clay & Clay, Danville, for appellee.

J. Vincent Aprile, II, Asst. Public Defender, Frankfort, for amicus curiae.

PALMORE, Justice.

Shortly after 1:00 A. M. on February 6, 1974, police officers of the City of Danville observed an automobile being operated in an erratic manner and arrested its driver, Minnie Dawson, for the offense of driving while under the influence of intoxicating beverages, committed in their presence. KRS 189.520. While she was sitting in the police cruiser under arrest the officers called for a wrecker to remove her automobile to a place of storage and, in accordance with a standard policy of the Danville Police Department, proceeded to inventory its contents. In the process they opened the trunk of Mrs. Dawson's car and discovered two cases of beer and a large quantity of whiskey in half-pint bottles. This led to an additional charge against her for illegally transporting alcoholic beverages for purpose of sale in a dry territory. KRS 242.230. Eventually she was convicted on the drunk-driving charge, but the trial court directed a verdict of acquittal on the transporting charge after excluding evidence of the liquor and beer upon the ground that it had been obtained by an illegal search in violation of the Fourth Amendment. The Commonwealth appeals, seeking a certification of the law.

The Commonwealth's contention is that the evidence was admissible under "the rule that evidence of crime found in plain view by law enforcement officers who enter an impounded vehicle without a search warrant for the purpose of inventory and storage of effects is admissible over Fourth Amendment objections," citing Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968), and Cady v. Dombrowski, 413 U.S. 433, 93 S. Ct. 2523, 37 L.Ed.2d 706 (1973).

In *Harris*, the automobile in which the incriminating evidence was found had been lawfully impounded as evidence following the arrest of its owner on a robbery charge. A regulation of the police department required officers to search an impounded vehicle, remove all valuables from it, and leave a property tag listing appropriate information. In the course of executing this procedure at a storage lot to which the automobile had been towed, the arresting officer rolled up the car windows and locked the doors. When he opened the door on the passenger side he discovered an automobile registration card, issued to the victim of the robbery, lying face up on the metal stripping over which the door opened and closed. The decision of the Supreme Court with respect to the admissibility of this evidence was as follows (emphasis added):

"The sole question for our consideration is whether the officer discovered the registration card by means of an illegal search. We hold that he did not. The *admissibility of evidence found as a result of a search under the police regulation is not presented*

*by this case.* The precise and detailed findings of the District Court, accepted by the Court of Appeals, were to the effect that the discovery of the card was not the result of a search of the car, but of a measure taken to protect the car while it was in police custody. Nothing in the Fourth Amendment requires the police to obtain a warrant in these narrow circumstances.

"Once the door had lawfully been opened, the registration card, with the name of the robbery victim on it, was plainly visible. It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence."

In *Dombrowski*, the automobile in question had been wrecked on the highway and had to be removed at the instance of police officers investigating the accident. The driver was taken to a hospital in a drunken condition. He was an off-duty Chicago policeman, and the local officers believed that he was required to carry his service revolver at all times. In an effort to find such a weapon, in order that it might not fall into unauthorized hands, they searched the automobile at the storage lot to which it had been removed. During the course of the search they discovered incriminating evidence of a homicide committed by the driver. The Supreme Court held this evidence admissible upon the ground that under the circumstances of the particular case the search was not unreasonable:

"Where, as here, the trunk of an automobile, which the officer reasonably believed to contain a gun, was vulnerable to intrusion by vandals, we hold that the search was not 'unreasonable' within the meaning of the Fourth and Fourteenth Amendments." 413 U.S. at p. 448, 93 S.Ct. at p. 2531.

Thus far the Supreme Court has not decided whether or under exactly what circumstances an inventory procedure, either *ad hoc* or conducted pursuant to regulation

or custom, is a search. Other courts have deployed to all points of the compass. See annotation at 10 A.L.R.3d (1974 Supp.), p. 8. An objective and well-reasoned analysis is presented in United States v. Lawson, 487 F.2d 468 (8th Cir., 1973), in which, as in this case, there was "no assertion that the search . . . [could] . . . be justified upon any ground other than as an inventory search." 487 F.2d at p. 469.

Lawson and a companion, Fawcett, were arrested on separate charges of passing cold checks. Fawcett's car, which was parked in a motel parking lot with its doors and trunk locked, was impounded and taken to the police station. In accordance with regulations applicable to impounded vehicles it was completely searched for the purpose of preparing an inventory of its contents and placing the valuables in storage. Discovery of a pistol in the trunk led to federal firearms charges, during the trial of which this evidence was excluded. In affirming the judgment the Circuit Court of Appeals observed that "the standard of reasonableness must be evolved in light of the Fourth Amendment, not in light of what our view of reasonable police procedures might be," (487 F.2d at p. 475) and concluded as follows:

"We agree with the District Court that the search of the automobile and seizure of the revolver was unreasonable. It was not justified by a warrant or any exception to the warrant requirement, nor do we wish to create an exception for what might be called 'searches incident to police custody and control.' If such an exception is to be created, we feel that it should be done by the Supreme Court. In so holding, we do not formulate a rule that every inventory search is *per se* unreasonable. However, we do think that the fact such a search is made pursuant to a police regulation should have no bearing in determining whether the search is reasonable under all circumstances."

\* \* \* \* \* \*

"We think the proper approach in this area is to assess the reasonableness of the police conduct in light of all the circumstances of the case, without giving effect to the presence or absence of a police regulation. This approach does not have the surety of a rule declaring all inventory searches to be reasonable or unreasonable, and must to some extent leave law enforcement officials with some uncertainty as to what will be considered reasonable or unreasonable. This, however, appears to be a fact of life when dealing with Fourth Amendment problems in a variety of contexts. When unsure as to the legality of their contemplated conduct, it is always open to the police to attempt to secure a warrant in order to have a prior judicial determination of the reasonableness of their proposed conduct, though in many instances the exigencies of the situation may preclude such a course. We do not believe it possible for this court to settle this area of the law. We do think, however, that it should only be in the atypical case that police officers would find it necessary to conduct a general inventory search of an impounded vehicle. The owner or operator of a vehicle may be able to take reasonable steps to safeguard his property at the time of arrest, thus obviating the necessity of impoundment in that instance, unless, of course, the automobile has been impounded as evidence, or pursuant to a forfeiture statute. If the impounding is done for the stated reason, the protection of the owner's property, it is only reasonable that the owner be allowed to choose whether or not he wishes his car impounded. In cases where the owner or operator cannot make his wishes known, whether because of incapacity, or absence (*i. e.*, a parking violation), in most instances the property would be adequately safeguarded by rolling up the windows and locking the doors, subject, of course, to reasonable steps to safeguard property in plain view within the automobile. We think such a standard procedure would insure as well an inventory protection against groundless claims for lost property. In the instant case, it is hard to see, when the car was locked and the windows rolled up at the time it was impounded, how the property is better safeguarded by a breaking into the car and locked trunk to inventory. In many cases, the value of the property 'safeguarded' by these actions would be less than the damage caused to the automobile by these 'protective' measures.

"The case before us is not the atypical case that would support an inventory search. No justification, except police custody of the vehicle, has been advanced or is supportable on the record to validate the warrantless search of the locked trunk of the vehicle. The search was therefore unreasonable."

 In the case before us here the arresting officer had more reason to impound the automobile than did the police in *Lawson*, because the driver was not capable of operating it herself. Nevertheless, the ticket and complaint completed pursuant to the arrest shows that she lived in Danville, which is not a large metropolis, but a city of the third class. KRS 81.-010(3). Though we need not pass on the right of the police, *vel non*, to impound the car, whether it was necessary for them to do so is an element to be considered in determining whether it was reasonable for them to search it. We do not say that police officers must find a custodian for an automobile on a public street after arresting its driver, but ordinarily it should be just as easy to reach some person at his home as it is to call for a wrecker. Moreover, unless it is necessary for the police to impound a vehicle they are no more responsible for its security than they are for the security of the home from which the owner's arrest causes him to remain absent. If it is locked and the keys are given back to him, and if the arrest is valid, it is no fault of the police that the car must remain unguarded until he is able to make arrangements for its removal. Although in this particular instance the driver was not capable of operating her vehicle while un-

der custody, the practice of impounding vehicles following arrests for mere traffic violations is utterly unnecessary and, indeed, is of questionable legality.

The facts of this case do not bring it within the "plain view" principle of *Harris* or the "reasonableness" test of *Dombrowski*. Our view is that if it is reasonably necessary either to impound and store a vehicle or to leave it unattended, police officers may close and lock it, and that whatever they observe in plain view during that process may be used as evidence in support of any charge to which it may be relevant, but that the opening of or prying into compartments or containers within the vehicle constitutes a search, which in the absence of a warrant or of special circumstances as exemplified by *Dombrowski* is in violation of the Fourth Amendment.

The law is so certified.

All concur.