STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. RICHARD W. JONES, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued January 6, 1981—Decided March 5, 1981.

Before Judges BOTTER, KING and McELROY.

*Hilary L. Brunell,* Assistant Essex County Prosecutor, argued the cause for appellant (*John J. Degnan,* Attorney General of New Jersey, attorney; *Donald S. Coburn,* Essex County Prosecutor, of counsel).

*Gerald P. Boswell*, Assistant Deputy Public Defender, argued the cause for respondent (*Stanley C. Van Ness*, Public Defender, attorney).

The opinion of the court was delivered by

BOTTER, P. J. A. D.

With leave to appeal from an interlocutory order having been granted, the State appeals from an order suppressing evidence. Defendant's motion to suppress the evidence was granted at the conclusion of a hearing in which the sole witness was the arresting officer, a patrolman of the Newark Police Department.

The essential facts may be stated briefly. Patrolman Filandro and his partner were on patrol in a marked car on Wednesday, August 1, 1979 at about 3:45 p. m. They observed defendant sitting on or leaning back against a motorcycle with both legs on one side. There were two helmets on the front seat but there was no one other than defendant in the vicinity. Filandro was familiar with the neighborhood because he lived several houses away from the house in front of which the motorcycle was parked.

Filandro testified that there had been a rash of burglaries in the area committed during the daylight hours when people were still at work. He decided to question defendant to find out "where the other guy was," in view of the two helmets and the fact that defendant was "looking around nervously." Asked if the motorcycle was his, defendant said no. He was then asked where the owner was and defendant said that he was "down the street." Filandro testified that there was no one in sight. He and his partner decided to bring defendant over to the patrol car for a record check of the motorcycle. He testified that it was not his purpose to arrest defendant at that time. He said it was their practice to do a pat-down for their own protection and to "record-check him and release him" if the check came up "clear."

Defendant was asked to identify himself, and he did. The officers then placed him in the patrol car with the intention of using the car radio to check on the ownership of the motorcycle to see if it had been reported stolen. Defendant was wearing a shoulder bag which the officers took from him "for our own protection not knowing what might be in there." The car window was open and the bag was tossed onto the front seat. When it fell a packet or small plastic bag containing white pills came out. There was "no prescription" with the pills and the officers believed them to be controlled dangerous substances. Defendant was then placed under arrest.

The trial judge suppressed the search, apparently on the ground that the police improperly "deprived defendant of his possession" instead of merely squeezing the bag to determine if it contained a weapon. But the police had no intention of keeping the shoulder bag; their purpose was simply to separate the bag from defendant in case the bag contained a weapon with which the police could be assaulted while they made the vehicle check. That the pills fell out was entirely fortuitous, because the pills then were in plain view. The separation of defendant and his shoulder bag was not an unreasonable protective measure. It was certainly less intrusive than a search of the bag, which would have been unlawful. *See United States v. Chadwick*, 433 *U.S.* 1, 97 *S.Ct.* 2476, 53 *L.Ed.2d* 538 (1977). However, these brief comments are not enough to resolve the issues in this case.

To decide the case we must thread our way through the narrow path drawn by recent cases in pursuit of rules that will protect the privacy and freedom of movement of individuals in our society and will allow room for appropriate investigation of possible violations of our laws. This case can be distinguished from *Delaware v. Prouse*, 440 *U.S.* 648, 99 *S.Ct.* 1391, 59 *L.Ed.2d* 660 (1979), where the court condemned the stopping of moving vehicles for the purpose of making a random check of credentials with the detainees selected at the discretion of the police. Nor is it analagous to the seizure of evidence of a crime in plain

view of an officer who had no right to be where he made the observation, having forcibly entered defendant's home, for example, for the purpose of making a routine warrantless arrest for a felony as in *Payton v. New York*, 445 *U.S.* 573, 100 *S.Ct.* 1371, 63 *L.Ed.2d* 639 (1980), relied upon by defendant at oral argument. Nor does it involve custodial interrogation at police headquarters after an arrest without probable cause, as in *Dunaway v. New York*, 442 *U.S.* 200, 99 *S.Ct.* 2248, 60 *L.Ed.2d* 824 (1979), upon which defendant has also relied.

In this case defendant, who was in possession of a parked motor vehicle, responded to the police inquiry as to its ownership. Although the officers had only the barest suspicion of possible criminal activity, they could lawfully inquire as to the ownership of the vehicle without violating the rule in *Delaware v. Prouse, supra*, which concerned the stop of a moving vehicle selected by the police. Here, in a sense, the vehicle presented itself to the police, and they ought not be condemned for inquiring about its owner although they were concerned less about a motor vehicle violation than their hunch that defendant might have been a lookout for the missing driver. In any case, defendant responded. He was not the owner and apparently did not have the vehicle's registration in his possession, as required by *N.J.S.A.* 39:3–29 had he been the operator. But the alleged owner was not in sight. The officers decided, therefore, to detain defendant briefly for the purpose of making a motor vehicle check by car radio. We do not find a brief detention for this purpose unlawful in these circumstances. We recognize, of course, that the Fourth Amendment applies to investigatory detentions as well as an arrest. *Davis v. Mississippi*, 394 *U.S.* 721, 726–727, 89 *S.Ct.* 1394, 1397–1398, 22 *L.Ed.2d* 676, 681 (1969). However, some detentions or investigatory stops without probable cause are lawful. *United States v. Martinez-Fuerte*, 428 *U.S.* 543, 96 *S.Ct.* 3074, 49 *L.Ed.2d* 1116 (1976) (checkpoint stop of vehicles to look for aliens); *Terry v. Ohio*, 392 *U.S.* 1, 88 *S.Ct.* 1868, 20 *L.Ed.2d* 889 (1968) ("a brief on-the-spot stop on the street and a frisk for weapons," as

described in *Dunaway, supra,* 442 *U.S.* at 209, 99 *S.Ct.* at 2254–2255, 60 *L.Ed.2d* at 833); *see Delaware v. Prouse, supra,* 440 *U.S.* at 663, 99 *S.Ct.* at 1401, 59 *L.Ed.2d* at 673–674 (authorizing nondiscretionary credential checks at roadblocks); *Davis v. Mississippi, supra,* 394 *U.S.* at 728, 89 *S.Ct.* at 1398, 22 *L.Ed.2d* at 681 (leaving open the legality of a brief detention for fingerprinting purposes without custodial interrogation); *cf. Pine v. Okzewski,* 112 *N.J.L.* 429, 436–437 (E. & A.1933) (a nonresident driver without a registration may be detained until the police verified that no registration was required by his home state, Oklahoma, at the time).

We conclude that the temporary detention of defendant while the vehicle check was being made was not a violation of defendant's Fourth Amendment rights. It was to be a brief seizure without probable cause, but it was justified by the absence of the vehicle's owner, defendant's lack of a certificate of registration, and the slightly suspicious circumstances which called defendant to the police officer's attention initially. The next step, however, was separating the shoulder bag from defendant. We find that this was a reasonable security measure supported by *Pennsylvania v. Mimms,* 434 *U.S.* 106, 98 *S.Ct.* 330, 54 *L.Ed.2d* 331 (1977). There, after stopping defendant, the driver of a motor vehicle, for a motor vehicle violation (an expired license plate), the officer ordered defendant out of the car without any basis for believing that he was armed and dangerous. This led to the discovery of a weapon in defendant's possession. The United States Supreme Court held that ordering defendant out of his car was not an impermissible seizure, as the Supreme Court of Pennsylvania had held, even though the officer conceded he had no reason to fear defendant since his behavior had not been unusual or suspicious. But defendant was ordered out of the car as a matter of practice as a precautionary measure, for the officer's safety. The court found the intrusion on the driver's liberty *de minimis,* a mere inconvenience to be tolerated in the interest of the officer's safety.

■ Similarly, we find that taking the shoulder bag from defendant without intending to search it was a reasonable security measure that did not invade defendant's privacy. Therefore, the accidental disclosure of unlawful drugs which occurred in the process ought not be suppressed. There is no suggestion that the incident was a pretext for an unlawful search. *Cf. State v. Slockbower,* 79 *N.J.* 1, 13 (1979). Since the plain view of the drugs was not a product of an unlawful seizure of defendant or of an unlawful search or seizure of his property, the evidence should not have been suppressed. Contraband in plain view of an officer in these circumstances can be lawfully seized. *See Harris v. United States,* 390 *U.S.* 234, 88 *S.Ct.* 992, 19 *L.Ed.*2d 1067 (1968); *Payton v. New York, supra,* 445 *U.S.* at 587, 100 *S.Ct.* at 1380, 63 *L.Ed.*2d at 651.

The order suppressing evidence is reversed, and the case is remanded to the trial court for trial.