PEOPLE v SIEGEL

Docket No. 43582. Submitted December 5, 1979, at Grand Rapids.—
Decided February 21, 1980. Leave to appeal applied for.

Kurt C. Siegel was convicted of possession of cocaine, Kent
Circuit Court, Stuart Hoffius, J. The defendant appeals, alleging
that the trial court erred in refusing to suppress as evidence
the marijuana and a billy club which were discovered during
the inventory search of the defendant's automobile because
that search without a warrant was not valid and the marijuana
and billy club were not in plain view and that the cocaine
which was found in the back of the police car used to transport
the defendant to the police station should have been suppressed
because the defendant had not been informed of his right to
post interim bail on the outstanding traffic warrant for which
he was arrested. *Held:*

1. The plain view exception to the requirement for a search
warrant was not applicable to the seizure of the marijuana and
billy club found in the defendant's car. The officer who seized
the items while looking for the registration for the car testified
that he did not see either item while looking for the registra-
tion and did not say that this evidence was observable from the
car windows.

2. The "inventory search" of the car was a pretext for an
investigation rather than a normal police procedure. There was
no valid reason to impound the defendant's automobile which

REFERENCES FOR POINTS IN HEADNOTES

[1] 29 Am Jur 2d, Evidence § 415.

75 Am Jur 2d, Trial § 416.

[2] 5 Am Jur 2d, Appeal and Error § 880.

[3] 68 Am Jur 2d, Searches and Seizures § 88.

Search and seizure: observation of objects in "plain view"—Su-
preme Court cases. 29 L Ed 2d 1067.

[4, 5] 68 Am Jur 2d, Searches and Seizures §§ 57, 106.

Validity, under Federal Constitution, of warrantless search of auto-
mobile—Supreme Court cases. 26 L Ed 2d 893.

Lawfulness of "inventory search" of motor vehicle impounded by
police. 48 ALR3d 537.

[6] 8 Am Jur 2d, Bail and Recognizance §§ 21-23.

was locked and parked in a private driveway and was not a threat to public safety. The police officer testified that he was not concerned with his personal safety, nor was he seeking the fruits of a possible breaking and entering, the possible occurrence of which the police were investigating. Also, the defendant's companion, who had not been arrested at the time of the inventory search, could have arranged to take care of the vehicle if the defendant did not wish to leave it in the driveway. The trial court erred in denying the defendant's motion to suppress evidence of the billy club and the marijuana which were fruits of an improper search without a warrant.

3. The defendant was initially arrested only because of an outstanding warrant on a traffic offense. The arresting officer was under an affirmative duty to inform the defendant that one who is arrested for a minor offense has a right to post bail under the interim bail statute. The discovery of the cocaine, which the defendant apparently dropped in the back seat of the police car, was a result of the failure of the police officer to inform the defendant of his rights under the interim bail statute. If the defendant had been informed of the right to bail, it is logical to assume that he would not have felt the need to discard the cocaine in the police car in an effort to avoid its discovery in a stationhouse search. The cocaine should have been suppressed.

Reversed and the defendant is discharged.

1. SEARCHES AND SEIZURES — REASONABLENESS — BURDEN OF PROOF — ADMISSIBILITY OF EVIDENCE.

The prosecution has the burden of proving the reasonableness of any search and seizure; if the prosecution fails to meet this burden, the courts should suppress the admission of any fruits of the search into evidence.

2. CRIMINAL LAW — EVIDENCE — SUPPRESSION OF EVIDENCE — APPEAL AND ERROR.

A trial court's determination of whether evidence is admissible in a suppression hearing will be reversed only where it is clearly erroneous.

3. SEARCHES AND SEIZURES — PLAIN VIEW DOCTRINE — SEARCH WITHOUT WARRANT — JUSTIFICATION — INADVERTENT DISCOVERY.

A police officer, in order to apply the plain view doctrine to justify a seizure of evidence without a warrant, must be rightfully in a position from which the evidence is plainly visible, must have prior justification for the intrusion, and must discover the evidence inadvertently.

4. Searches and Seizures — Inventory Search — Automobiles — Reasonableness.

   The relevant inquiry in determining if an inventory search and impoundment of a car by the police is valid is the reasonableness of the seizure under all the facts and circumstances of each case.

5. Searches and Seizures — Inventory Search — Justification.

   Justifications for an inventory search are as follows: 1) the protection of property while held in police custody, 2) protection of the police against claims over lost or stolen property, and 3) protection of the police from potential danger.

6. Bail — Arrest — Minor Offenses — Right to Post Bail.

   An arresting officer is under an affirmative duty to inform one who is arrested for a minor offense of his right to post bail.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *David H. Sawyer,* Prosecuting Attorney, and *Carol S. Irons,* Chief Appellate Attorney, for the people.

*Lustig & Friedman, P.C.,* for defendant on appeal.

Before: Bronson, P.J., and Allen and R. M. Maher, JJ.

Per Curiam. The defendant appeals as of right from his jury conviction for possession of cocaine, MCL 335.341(4)(b); MSA 18.1070(41)(4)(b). The defendant was sentenced to a term of 2-1/2 to 4 years of imprisonment.

At the preliminary examination, the arresting officer, Robert Wildman, testified that he and his partner were called to 1745 Willis in the City of Grand Rapids to investigate a possible breaking and entering of a vacant house. After speaking briefly with neighbors, the officers walked up to the house, noting a white and maroon car parked in the driveway with Florida license plates. They

could see someone with a flashlight walking around the kitchen, so they went to the back of the house. The back door was closed but not locked, and appeared to have been kicked in. The defendant and a man named Eiko were found to be inside. Mr. Siegel stated that he was the owner of the house, yet he had no key or any identification in his possession, although Mr. Eiko did have identification. The officers then ran a LEIN check and determined that there was an outstanding bench warrant on Mr. Siegel for a traffic offense in Niles, Michigan. Officer Wildman then went to the glove compartment of the car and found a leather wallet containing a picture identification for the defendant under the name Daniel McDonald. Mr. Siegel was then placed in a transfer cruiser and taken downtown by Officer Buekema. After Mr. Siegel's departure, the officers conducted an inventory search of the parked automobile, which a LEIN check disclosed was registered in Florida under the name of Scott Siegel, whose name was on the registration. The officers found a billy club which was lying on the carpeting on the passenger side, to the left of the front seat. They also found a bag of marijuana lying on the console, and a leather case in the tirewell of the trunk which contained a loaded .25-caliber automatic pistol. Officer Sweetman, Wildman's partner, did not testify at the preliminary examination.

Richard Buekema, the officer who transported the defendant to jail subsequent to his arrest, stated that he always checks the back seat of his cruiser when he takes his car out, in order to make sure that nothing was left by a previous occupant. On the day in question, he had followed his custom of making sure the back seat was "clean". After transporting the defendant, he

checked the back seat again, and found a folded white packet on the floor underneath the seat, over the hump. The packet contained a white powdery substance, later determined to be cocaine. Officer Buekema said that he had to lift the back seat up in order to see the packet.

Pursuant to the testimony previously summarized, the defendant was bound over on the charges of possession of a billy club and possession of cocaine. Defendant then made a motion to suppress the evidence obtained during the inventory search and to quash the information, and a suppression hearing was held.

Officer Wildman testified again at the suppression hearing. At this time, he said that when they entered the house, Mr. Siegel identified himself, said he was the owner, and was showing the house to Mr. Eiko. However, he had no key with which to gain entry into the house. Officer Wildman left the two men in the kitchen area with his partner, and went back to the scout car to run a computer check, which took about 5 or 10 minutes. When he learned of an outstanding warrant based on a speeding ticket, he returned to the house and placed the defendant under arrest. He said that the basis for the arrest was the warrant and also breaking and entering an unoccupied dwelling. After the defendant was taken downtown, Eiko was at first told that he could leave, but then Officer Wildman decided to arrest him for breaking and entering also. Previously, the defendant said that the car in the driveway belonged to his brother, Scott Siegel, and this was confirmed by a LEIN check. The defendant gave the officer the keys to the car. Officer Wildman explained his post-arrest inventory search of the car as a matter of department policy. The car would be towed to

the station for safekeeping, even though it was parked on private property, since it was a vacant house belonging to an unknown person. The officer did not ask the defendant if he could make any other arrangements for the car and said he was not concerned with his personal safety at the time he made the inventory search. He said that when he checked the glove box for identification, he only saw the brown wallet, not the items found in the subsequent inventory search. The officer said he was not looking for any fruits of the breaking and entering during the inventory search. At the time of the inventory search, Mr. Eiko was standing outside near one of the police cruisers and had not yet been placed under arrest.

Robert Eiko also testified at the suppression hearing. He stated that he had known the defendant for some time. Mr. Eiko was in the remodeling business. The defendant offered to sell him the house on Willis Street, or have him remodel it, so he went there in order to inspect the premises. The house had previously been damaged by a fire, at which time the doors were all kicked in and all of the doorjambs were broken. The defendant was going to leave the next morning, so they went to see the house at night. Eiko drove the defendant's car because Siegel did not have a driver's license. As they were coming up from the basement to the kitchen, some police officers came in and questioned them. After they explained their presence, Siegel and Eiko were allowed to go on about their business of inspecting the house, although one policeman followed them. The defendant then took Eiko outside to show him the garage and lot lines. When they returned to the house, the officers told Siegel he was under arrest for a traffic ticket. Eiko asked if he was under arrest, and he was told, "not

yet". Eiko did not hear the officers tell Siegel that he was under arrest for breaking and entering. After Siegel was arrested, the officers offered to call a cab for Eiko, so he waited around for a while. He finally started to walk away when one officer called him back and said that he had better go with them. He was booked on the charge of breaking and entering at the station.

The trial court denied the motion to suppress and the motion to quash the information. A jury trial commenced on October 11, 1978.

During the trial, Officer Wildman took the stand for the third time. His version of the events was significantly different this time. He stated that after first questioning Mr. Siegel, he went to the car to try and find a registration, identification, or proof of ownership, and saw the billy club lying next to the driver's seat, and then he saw the bag of marijuana on the console between the bucket seats. Officer Wildman then opened the glove compartment and removed a brown leather wallet which had a picture of the defendant under the name of Daniel McDonald. He also found a registration under the name of Scott Siegel. Wildman removed these items from the car, returned to the house, advised defendant of a traffic warrant, and placed him under arrest. He then escorted defendant outside and turned him over to Officer Buekema to transport him to the jail. At that time, he questioned Mr. Eiko, and arrested him for breaking and entering. According to police policy, defendant's car was taken into police custody for safekeeping.

Ronald Sweetman, Wildman's partner, testified for the first time at the trial. He stated that he and Wildman responded to a reported breaking and entering, and when they saw someone in the

house, they radioed for assistance and the house was surrounded. At that point, they went inside. Siegel and Eiko came upstairs to the kitchen from the basement. They identified themselves, and Eiko produced identification. Wildman left to do a LEIN check, and Sweetman stayed with Siegel and Eiko. Since he had "no real grounds to arrest them and the whole thing was kind of a mix-up", Sweetman accompanied them while they roamed about the house, going from room to room, and later outside to the garage. At some point, someone tried to ascertain the owner of the house from the city directory, but Sweetman did not see the result of the inquiry. Wildman returned and said that there was an outstanding bench warrant on Siegel for an unpaid traffic ticket, and defendant was arrested at this time. Wildman conducted a pat-down search, and Sweetman took the defendant to the back seat of Officer Buekema's cruiser. Defendant was very cooperative and so they did not handcuff him. He was alone in the cruiser. Eiko was still standing near the house at this time. He was later taken downtown, but was never formally charged with anything as the result of the events of that night. At this time, Sweetman went over to assist Wildman in listing the articles found during the inventory search of the car.

The defendant contends on appeal that the trial court erred in refusing to suppress the marijuana that was discovered during the inventory search of the automobile because that search was not valid and the bag was not in plain view.

The people have the burden of proving the reasonableness of any search and seizure. *People v White,* 392 Mich 404; 221 NW2d 357 (1974). If the people fail to meet this burden, the courts will suppress the admission into evidence of any fruits

of the unwarranted search. *Mapp v Ohio,* 367 US 643; 81 S Ct 1684; 6 L Ed 2d 1081 (1961).

The trial court's determination of whether evidence is admissible in a suppression hearing will be reversed only where it is clearly erroneous. *People v White,* 84 Mich App 351, 354; 269 NW2d 598 (1978), *People v Ulrich,* 83 Mich App 19; 268 NW2d 269 (1978). We will therefore consider the testimony available to the trial court at the suppression hearing, which consists of both the preliminary examination testimony and the testimony at the suppression hearing, in order to determine whether the people's burden to show the reasonableness of the search was met.

In *People v Murphy,* 87 Mich App 461, 465; 274 NW2d 819 (1978), the Court stated that in order for the plain view doctrine to apply, the officer must have been rightfully in the position from which the evidence was in plain view, the officer must have had prior justification for his intrusion, and the discovery must have been inadvertent. According to Officer Wildman, he did not see either the billy club or the marijuana when he was looking in the car for the registration. He did not say that this evidence was observable from the car windows. Therefore, the plain view exception to the warrant requirement was not applicable.

We must therefore decide if the inventory search of the car was valid. In *South Dakota v Opperman,* 428 US 364; 96 S Ct 3092; 49 L Ed 2d 1000 (1976), the Supreme Court upheld an inventory search and impoundment pursuant to state police procedures as being reasonable under the Fourth Amendment, where the car was impounded because of multiple parking violations and the owner was not present to make other arrangements. The Court stated that the relevant inquiry

is the reasonableness of the seizure under all the facts and circumstances of each case. The Court mentioned the following circumstances where such a search would be justified:

"In the interests of public safety and as part of what the Court has called 'community caretaking functions,' *Cady v Dombrowsky, supra,* at 441, automobiles are frequently taken into police custody. Vehicle accidents present one such occasion. To permit the uninterrupted flow of traffic and in some circumstances to preserve evidence, disabled or damaged vehicles will often be removed from the highways or streets at the behest of police engaged solely in caretaking and traffic-control activities. Police will * * * frequently remove and impound automobiles which violate parking ordinances and which thereby jeopardize both the public safety and the efficient movement of vehicular traffic. The authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge." 428 US at 368-369.

The Court noted that the impoundment in question was a standard police procedure and was not a pretext concealing a police investigatory motive.

The *Opperman* case was cited with approval by this Court in *People v Boutell,* 80 Mich App 216; 263 NW2d 36 (1977), where the defendant was arrested for driving under the influence of liquor and snow along the side of the road hampered parking the vehicle. Police impounded the vehicle, then conducted an inventory search.

In *People v Merchant,* 86 Mich App 355, 361; 272 NW2d 656 (1978), summarized the justifications for an inventory search as follows: (1) the protection of property while held in police custody; (2) protection of the police against claims over lost or stolen property; and (3) protection of the police

from potential danger. In the Merchant case, police removed defendant's briefcase from a rented car at the airport. The Court first decided that defendant had returned the leased car and so had no privacy interest or standing to contest the search. The Court then found that, under Opperman, the police were justified in opening the defendant's briefcase to inventory the contents, since defendant had been placed under arrest on an outstanding warrant and his personal effects were to be taken into police custody.

In People v Erskin, 92 Mich App 630, 643; 285 NW2d 396 (1979), this Court upheld an inventory search of an automobile as reasonable under Opperman because its driver had abandoned it at the side of the road after being stopped by police, who believed it to be stolen. The Court concluded that, under these circumstances, the car was legitimately taken into police custody.

In the cases which follow Opperman, supra, we note that the automobile was either parked illegally on a public street, or at the side of the road, or had indeed been abandoned by its driver. The instant factual setting involves a vehicle which was legally parked on private property, which the defendant alleged that he owned.

In United States v Newbourne, 600 F2d 452, 457-458 (CA 4, 1979), the court stated that under Coolidge v New Hampshire, 403 US 443; 91 S Ct 2022; 29 L Ed 2d 564 (1971), and United States v Bradshaw, 490 F2d 1097 (CA 4, 1974), there is a significant difference between stopping, seizing, and searching a car on the open highway, and entering private property to seize and search an unoccupied, parked vehicle not then being used for any illegal purpose. The court noted that a search warrant would not be required if the car parked

on private property got there only after close pursuit. *Scher v United States,* 305 US 251, 254-255; 59 S Ct 174; 83 L Ed 151 (1938). See also, *Cardwell v Lewis,* 417 US 583; 94 S Ct 2464; 41 L Ed 2d 325 (1974).

We find that there was no valid reason to impound the locked automobile which was legally parked on a private driveway. The officer testified that he was not concerned with personal safety, nor was he seeking the fruits of a possible breaking and entering. The automobile was locked and property parked in a driveway so there was no public safety reason to impound it. The defendant's friend, Eiko, had not been arrested at that time and could presumably arrange to take care of the vehicle if the defendant did not wish to leave it in the driveway. In fact, the police never asked the defendant whether he wanted to make any arrangements for the automobile. We conclude that this "inventory search" was a mere pretext for an investigation rather than a normal police procedure, so we cannot uphold it under *Opperman, supra.*

Based on the foregoing analysis, the trial court erred in denying the defendant's motion to suppress the billy club and marijuana which were the fruits of the warrantless search.

The defendant's next allegation is that the cocaine which was found in the back of Sgt. Buekema's police car should have been suppressed because defendant had not been informed of his statutory right under MCL 780.581; MSA 28.872(1) to post interim bail. We agree.

It is clear from the testimony that the defendant was initially arrested only because of the warrant on the traffic offense and not because of the alleged breaking and entering. Siegel and Eiko were

both in the house together, yet Eiko was not arrested until after the defendant had been taken down to the station. In fact, according to his testimony, the police had told him that he was free to go and that they were going to call a cab for him. Officer Wildman returned from his car with the result of a LEIN check showing an outstanding warrant for Siegel and arrested Siegel.

Under *People v Dixon,* 392 Mich 691; 222 NW2d 749 (1974), the Supreme Court held that the arresting officer is under an affirmative duty to inform one who is arrested for a minor offense of his right to post bail. The Court further held that heroin which was discovered on the defendant's person at a jailhouse inventory search must be suppressed, where defendant had not been informed of this right.

In *People v Garcia,* 81 Mich App 260; 265 NW2d 115 (1978), the defendant was stopped for a minor traffic violation and was later convicted of possession of cocaine as a result of a search on the scene. This Court held that the search violated *Dixon, supra,* and said that where defendant had not been informed of his rights under the interim bail statute, the evidence must be suppressed, reasoning as follows:

"If *Dixon* were only to apply at the station house, as the prosecutor maintains, then astute police officers would quickly learn that, absent an advice of rights under the bail statute, evidence produced in an exhaustively intrusive on-the-scene search could be admitted but evidence derived from an equally comprehensive search at the jail could not. We doubt that the Supreme Court intended to create such an anomaly. Thus, to shore up what would otherwise be a gaping loophole in the law, we hold that Officer Ibanez, after having frisked defendant for weapons and having found none, had no authority to retrieve or examine the seemingly

innocuous tinfoil packets. Instead, he had a duty to inform this defendant 'of the statutory protection [under the interim bail act] of which he otherwise would probably be ignorant'. *Dixon, supra,* at 703.

"Contrary to the prosecutor's suggestion, we do not rule that police are now required 'to accept bail on the street', but that arresting officers, following an external (but fruitless) pat-down for weapons, are obliged to inform a minor traffic offender of his statutory rights and upon arrival at the station house to accept bail (proffered by such a defendant or one acting on his behalf, *Zehrung v State, supra,* 569 P2d [189] at 195 [Alaska, 1977]) if no magistrate is readily available for an arraignment." 81 Mich App 272-273. (Footnotes omitted.)

The fact that cocaine was discovered because defendant dropped it on the floor of the cruiser, rather than as the result of a search of his person, does not alter the result. See, *People v Recorder's Court Judge #2,* 73 Mich App 156, 159; 250 NW2d 812 (1977). If defendant had been informed of his right to bail, it is logical to assume that he would not have felt the need to discard the cocaine in the cruiser in an effort to avoid its discovery in a stationhouse search.

We therefore hold that the cocaine recovered from the police cruiser must be suppressed because defendant was not informed of his right to post bail.

The other allegations of error raised by the defendant are without merit and require no discussion.

Reversed and defendant is discharged.