STATE of Wisconsin, Plaintiff-Appellant,†

v.

Dennis D. CALLAWAY, Defendant-Respondent.

Court of Appeals

*No. 80–1333–CR. Argued March 26, 1981.—*
*Decided June 10, 1981.*
(Also reported in 308 N.W.2d 897.)

† Petition to review granted. ABRAHAMSON and CALLOW, JJ., took no part.

For the plaintiff-appellant there was a brief by *Bronson C. La Follette*, attorney general, and *Sally L. Wellman*, assistant attorney general. Oral argument by *Sally L. Wellman*.

For the defendant-respondent there was a brief by *William J. Tyroler*, assistant state public defender. Oral argument by *William J. Tyroler*.

Before Voss, P.J., Brown and Scott, JJ.

SCOTT, J. The State appeals from an order suppressing physical evidence, marijuana, seized in a warrantless inventory search of the locked glove compart-

ment of a car driven by Dennis Callaway. The State argues that Callaway is not entitled to challenge the search because he failed to show that he had a legitimate expectation of privacy in the car. The State points out that a certificate of title shows a third person to be the owner of the car. The State further argues that the trial court erred in concluding that police impoundment of the car and their subsequent search of the locked glove compartment was unreasonable. We conclude that by failing to raise in the trial court the factual issue of whether Callaway had a legitimate expectation of privacy in the searched area, the State has waived its right to argue on appeal that Callaway had no such expectation. Further, we uphold the trial court's conclusion that the impoundment was unreasonable. Accordingly, we affirm the suppression order.

On May 4, 1979, the State filed a complaint charging that Callaway possessed a controlled substance with intent to deliver contrary to sec. 161.41(lm)(b), Stats., and that he was a repeater contrary to sec. 939.62(1) (b), Stats. After a preliminary hearing on September 26 and October 22, Callaway was bound over for trial. On October 23, the State filed an information charging that Callaway violated secs. 161.41(lm)(b) and 939.62 (1)(b), Stats.

On January 24, 1980, Callaway filed a motion to suppress all evidence seized from the car on the ground that the search and seizure violated his rights under the United States and Wisconsin constitutions. A hearing was held on April 21.

The facts are undisputed. Early on May 3, 1979, Michael Quick, a police officer for the City of West Bend, was advised of an outstanding traffic warrant for the arrest of Dennis Callaway. While he was operating a marked police car on Main Street at about 7:13 p.m. on that date, Quick observed the driver of a passing car to be Callaway. He recognized Callaway from a previous

traffic stop. He radioed for assistance in making the arrest.

Quick stopped Callaway on Main Street just south of the intersection of Main and Franklin in front of a car wash. Parking was not permitted where Callaway stopped but parking was permitted until 2:00 a.m. on Main Street just north of Franklin.

As Quick walked up to Callaway's car, he observed a "bong" on the rear of the backseat. Callaway was alone in the car. Quick told Callaway of the outstanding traffic warrant and said that Callaway would have to post a $51 bond or be taken to the sheriff's department. Callaway said he had no money with him. Quick said he would have to place Callaway in custody and transport him to the sheriff's department. Quick told Callaway that pursuant to department policy, "a vehicle that was in an area such as that and we were transporting the owner of the vehicle to the Sheriff's Department, if there was not an operator that we could contact to come and get the vehicle, we would have to impound it for safekeeping." Quick did not provide Callaway the option of driving the car to the nearby parking zone. Callaway stated he did not know who could get the car at that time. Quick then told Callaway he could choose whether to have an officer drive the vehicle to the impounding lot or whether to pay a towing firm to tow the car to the lot. Callaway stated he preferred to have an officer drive it and gave Quick the keys. Quick did not search the car and did not seize the "bong." Officer Lieven came within ten or fifteen minutes and, using the keys, drove the car about a block to the police department garage. Officers Quick and Petitte drove Callaway to the sheriff's department.

Philip Lentz, another West Bend police officer, took possession of the car at the police garage at about 7:30 p.m. and conducted a complete inventory on it. The in-

ventory followed the department's normal procedures and lasted between a quarter and one-half hour. He filled out a motor vehicle inventory form as he conducted the inventory. He found, among other things, a large "bong" in a corner of the backseat and a plastic bag containing a vegetable substance in the glove compartment. He opened the glove compartment by using the keys, and he took the vegetable matter to a detective's office for testing. Pursuant to department policy, when a vehicle is brought in by an officer with the keys, the keys are not returned to the owner but are tagged and kept in an office for safekeeping. Lentz was aware of items having been stolen from impounded vehicles during his years with the West Bend Police Department. He had completed hundreds of car inventory searches. When he had the key to a locked glove compartment, he would open the compartment, but when he did not have the key, he would not open a locked compartment.

Over the State's objection, Callaway introduced into evidence a certified copy of a State of Wisconsin Certificate of Title showing a certain Michael Walsh to be the owner of the car driven by Callaway.

The search was not pursuant to a search warrant.

On May 20, 1980, the trial court issued a written decision granting the motion to suppress. The court found that at the time Callaway was apprehended, he had been stopped by the police on a city street in a no parking zone approximately twenty feet from a place where Callaway could have legally parked. The court concluded "that the taking of the defendant's car, the impounding of it, under the circumstances in this case was not reasonable." The court further concluded that the search of the locked glove compartment was unreasonable because police examination of the contents of a closed suitcase or other container in an inventory search was held unreasonable in *State v. McDougal,* 68 Wis.2d 399, 228 N.W.2d 671 (1975).

On June 9, the court entered an order suppressing the admission of the marijuana into evidence. The State presently appeals from this order.

## LEGITIMATE EXPECTATION OF PRIVACY

The State argues that Callaway does not have standing to challenge the search of the car because he was required to show but failed to show that he had a legitimate expectation of privacy in the car. The State is in no position to make this argument.

The test for determining whether a defendant is entitled to challenge the legality of a search and seizure under the fourth amendment is whether the defendant could legitimately expect privacy in the area which was the subject of the search. *Rakas v. Illinois*, 439 U.S. 128, 149 (1978). The analysis belongs more properly under the heading of substantive fourth amendment doctrine than under the heading of standing. *Id.* at 140.

In *Rakas,* the defendants were passengers in a car driven by the car's owner. The police stopped the car, searched it and found a rifle under the seat and shells in the glove compartment. The defendants were tried and convicted of armed robbery. The rifle and shells were admitted into evidence at trial. The defendants' motion to suppress the items as products of an illegal search was denied on the ground that the defendants lacked standing to object to the legality of the search. The United States Supreme Court affirmed and stated:

*Jones v. United States,* 362 U.S. 257 (1960) and *Katz v. United States,* 389 U.S. 347 (1967), involved significantly different factual circumstances. Jones not only had permission to use the apartment of his friend, but had a key to the apartment with which he admitted himself on the day of the search and kept possessions in the apartment. Except with respect to his friend, Jones had complete dominion and control over the apartment and

could exclude others from it. Likewise in Katz, the defendant occupied the telephone booth, shut the door behind him to exclude all others and paid the toll, which "entitled [him] to assume that the words he utter[ed] into the mouthpiece [would] not be broadcast to the world." *Id.*, at 352. Katz and Jones could legitimately expect privacy in the areas which were the subject of the search and seizure each sought to contest. No such showing was made by these petitioners with respect to those portions of the automobile which were searched and from which incriminating evidence was seized.

## III

The Illinois courts were therefore correct in concluding that it was unnecessary to decide whether the search of the car might have violated the rights secured to someone else by the Fourth and Fourteenth Amendments to the United States Constitution. Since it did not violate any rights of these petitioners, their judgment of conviction is affirmed. [Footnotes omitted.]

*Id.* at 149–50.

In *United States v. Salvucci*, 448 U.S. 83 (1980), the Supreme Court made it clear that the legitimate expectation of privacy test set forth in *Rakas* applied to cases involving crimes of possession. In so doing, the Court expressly overruled the doctrine set forth in *Jones v. United States*, 362 U.S. 257 (1960), which had given a defendant charged with a crime of possession "automatic standing" to challenge the legality of a search which produced the evidence against him. In *Salvucci*, the Court stated:

While property ownership is clearly a factor to be considered in determining whether an individual's Fourth Amendment rights have been violated, see *Rakas, supra,* 439 U.S., at 144, n. 12, property rights are neither the beginning nor the end of this Court's inquiry. In *Rakas,* this Court held that an illegal search only violates the rights of those who have "a legitimate expecta-

tion of privacy in the invaded place." *Rakas, Id.*, at 140. See also *Mancusi v. DeForte,* [392 U.S. 364 (1968)].

We simply decline to use possession of a seized good as a substitute for a factual finding that the owner of the good had a legitimate expectation of privacy in the area searched.

*Id.* at 91–92.

In the present case, the record shows that the State did not present to the trial court the factual issue of whether Callaway had a legitimate expectation of privacy in the car he was driving.[1] Indeed, when Callaway

---

[1] The only justification advanced by the State for its failure to raise the issue in the trial court is a statement in its brief that at the time of the suppression hearing, "the decision in *Jones* [regarding automatic standing] was in effect and the state may have believed that it could not challenge the defendant's standing." The United States Supreme Court rejected the same argument in *Steagald v. United States,* 101 S. Ct. 1642 (1981).

In *Steagald,* the Court was presented with the issue of whether a law enforcement officer may legally search for the subject of an arrest warrant in the home of a third party without first obtaining a search warrant. The federal district court and the federal court of appeals ruled that a search warrant was not necessary. On writ of certiorari, the United States Supreme Court reversed, despite the government's argument that the defendant lacked an expectation of privacy in the searched house. The Court noted that the government had not made this argument to the lower courts and concluded that the government, "through its assertions, concessions and acquiescence, has lost its right to challenge petitioner's assertion that he possessed a legitimate expectation of privacy in the searched home." *Id.* at 1647. The Court stated:

The Government asserts that it was unable to raise this issue in the courts below because both courts had acted before this Court decided *United States v. Salvucci,* 448 U.S. 83 (1980). We do not find this justification to be compelling. Under the "automatic standing" rule of *Jones v. United States,* 362 U.S. 257 (1960), any person charged with a possessory offense could challenge the search in which the incriminating evidence was obtained. *Salvucci* overruled *Jones* and instead limited such Fourth Amendment claims to those persons who had a reasonable expectation of

attempted to introduce a copy of the car's certificate of title into evidence to show the car's owner to be a third person, the assistant district attorney protested:

> I object to it; it is irrelevant, Your Honor, as to who the registered owner of the vehicle would be. That may have some probative weight at trial to shed some doubt on the State's proof, but at a motion to suppress such as this, it is not really in issue. Who the owner of the vehicle may be has nothing to do with who may be the possessor of certain items found in that vehicle.

---

privacy in the area or object of the search. Although *Salvucci* thus altered Fourth Amendment jurisprudence to some extent, the rationale of that decision was in large part simply an extension of this Court's earlier reasoning in *Rakas v. Illinois*, 439 U.S. 128 (1978). The *Rakas* decision held that an illegal search violated the Fourth Amendment rights only of those persons who had a "legitimate expectation of privacy in the invaded place." *Id.*, at 140. While that decision did not directly address the "automatic standing" rule of *Jones v. United States*, it was clearly an ill omen for the continued vitality of that decision. Since *Rakas* was decided well before this case was briefed and argued in the Court of Appeals, the Government could easily have raised before that court the question of whether petitioner's Fourth Amendment rights were even implicated by the search at issue here. Indeed, the Government in *Salvucci* clearly recognized the significance of *Rakas,* for in that case, despite the contrary authority of *Jones v. United States,* it argued from the outset that the defendant lacked a sufficient expectation of privacy to challenge the legality of the search under the Fourth Amendment. We are given no explanation why the Government failed to regard *Rakas* as of equal significance to this case.

*Id.* at 1646, n. 5.

*Rakas* was decided long before the time of the suppression hearing in the present case. The State could have easily argued in that hearing that Callaway had no legitimate expectation of privacy in the searched car. The fact that *Salvucci* had not yet been decided did not prevent prosecutors in another state from arguing in a suppression hearing that defendants charged with a possessory offense had no legitimate expectation of privacy in the searched place. *See State v. Guy*, 298 N.W.2d 45 (Minn. 1980).

Accordingly, the State cannot now reverse course and argue that Callaway was required to prove but failed to prove that he had a legitimate expectation of privacy in the car.[2]

## REASONABLENESS OF IMPOUNDMENT

The State argues that the trial court erred when it concluded that the impoundment of the car was unreasonable under the circumstances of this case. We disagree.

The Fourth Amendment to the United States Constitution provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Art. I, sec. 11, of the Wisconsin Constitution is substantially the same. Warrantless searches "are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States,* 389 U.S. 347, 357 (1967). These exceptions are "jealously and carefully drawn." *Jones v. United States,* 357 U.S. 493, 499 (1958). [Footnote omitted.]

*State v. Prober,* 98 Wis.2d 345, 351, 297 N.W.2d 1, 5 (1980).

---

[2] We note that it has not been decided whether a defendant charged with a possessory offense still has automatic standing in Wisconsin to challenge a search in which incriminating evidence is obtained. Although *Salvucci* rejected the doctrine of automatic standing as a matter of federal constitutional law, it is clear that the State of Wisconsin could adhere to the doctrine as a means of affording greater protection to persons within its boundaries under art. I, §11 of the Wisconsin Constitution. *State v. Doe,* 78 Wis.2d 161, 171, 254 N.W.2d 210, 215 (1977).

One of the exceptions to the warrant requirement is the right of the police to conduct a warrantless inventory search of a lawfully impounded vehicle pursuant to standard police procedures which are not a pretext for concealing an investigatory motive. *South Dakota v. Opperman*, 428 U.S. 364, 375–76 (1976).[3] Our supreme court has held that both the federal and the state constitutions require the *scope* of such an inventory search to be reasonable and to not include the examination of closed suitcases and containers found in the vehicle. *State v. McDougal*, 68 Wis.2d 399, 412–14, 228 N.W.2d 671, 678 (1975). But the scope of the search may include locked and unlocked automobile trunks, glove compartments and other compartments of a vehicle in which the owner might reasonably be expected to put personal effects or items of value. *Prober*, 98 Wis.2d at 353–55, 297 N.W.2d at 6–7.

For the first time in this state, we are presented with the question of what constitutes a lawful impoundment as a condition precedent to a warrantless inventory search.

[T]here has been a substantial and growing minority of jurisdictions which have insisted upon a factual showing of substantial police need, in the light of the constitutional regard for the privacy interests of automobile drivers, before approving the impoundment of a motor vehicle. *Mozzetti v. Superior Court of Sacramento County*, 4 Cal.3d 699, 94 Cal. Rptr. 412, 484 P.2d 84 (S. Ct. 1971); *People v. Miller*, 7 Cal.3d 219, 101 Cal. Rptr. 860, 496 P.2d 1228 (S. Ct. 1972); *State v. Boster*, 217 Kan. 618, 539 P.2d 294 (S. Ct. 1975); *State v. Singleton*, 9 Wash. App. 327, 511 P.2d 1396 (Ct. App. 1973); *State*

---

[3] In *Opperman*, the lawfulness of the impoundment was not in issue. Opperman's car was parked in violation of a local ordinance which prohibited parking in certain areas between 2:00 a.m. and 6:00 a.m. His car was ticketed at 3:00 a.m. and again at 10:00 a.m.

*v. Hardman,* 17 Wash. App. 910, 567 P.2d 238 (Ct. App. 1977) ; *Granville v. State,* 348 So.2d 641 (Fla. Dis. Ct. App. 1977) ; *State v. Goodrich,* 256 N.W.2d 506 (Minn. S. Ct. 1977) ; *State v. McCranie,* 137 Ga. App. 369, 223 S.E.2d 765 (Ct. App. 1976) ; *City of Danville v. Dawson,* 528 S.W.2d 687 (Ky. Ct. App. 1975) ; *Duncan v. State,* 281 Md. 247, 378 A.2d 1108, 1116 (Ct. App. 1977) ; *Dixon v. State,* 23 Md. App. 19, 327 A.2d 516 (Ct. Sp. App. 1974) ; *State v. Jewell,* 338 So.2d 633 (La. Sup. Ct. 1976) ; *United States v. Pannell,* 256 A.2d 925 (D.C. Ct. App. 1969). Federal decisions in general accord are *United States v. Lawson,* 487 F.2d 468 (8 Cir. 1973) ; *United States v. Edwards,* 554 F.2d 1331 (5 Cir. 1977) ; *United States v. Hellman,* 556 F.2d 442 (9 Cir. 1977). See also *State v. McDaniel,* 156 N.J. Super. 347, 383 A.2d 1174 (App. Div. 1978).

*State v. Slockbower,* 79 N.J. 1, 8–9, 397 A.2d 1050, 1053 (1979).[4]

We hold, consistent with the courts in other jurisdictions, that a vehicle is lawfully impounded under the United States and Wisconsin constitutions if the owner or driver gives his or her informed consent or if there is shown to be a reasonable police need to impound the vehicle. The Washington Court of Appeals provides some examples of when there may be a reasonable police need to impound:

"Reasonable cause for impoundment may for example, include the necessity for removing (1) an unattended-to car illegally parked or otherwise illegally obstructing traffic; (2) an unattended-to car from the scene of an accident when the driver is physically or mentally incapable of deciding upon steps to be taken to deal with his property, as in the case of the intoxicated, mentally incapacitated or seriously injured driver; (3) a car that

---

[4] Since *Slockbower* was decided, the list of jurisdictions has grown. *Drinkard v. State,* 584 S.W.2d 650 (Tenn. 1979); *State v. Peterson,* 583 S.W.2d 277 (Mo. App. 1979); *State v. Phifer,* 250 S.E.2d 309 (N.C. App. 1979) ; *Benavides v. State,* 600 S.W.2d 809 (Tex. Crim. App. 1980) ; *People v. Siegel,* 95 Mich. App. 594, 291 N.W.2d 134 (1980).

has been stolen or used in the commission of a crime when its retention as evidence is necessary; (4) an abandoned car; (5) a car so mechanically defective as to be a menace to others using the public highway; (6) a car impoundable pursuant to ordinance or statute which provides therefor as in the case of forfeiture."

*State v. Bales*, 15 Wash. App. 834, 835–36, 552 P.2d 688, 689 (1976) (quoting *State v. Singleton*, 9 Wash. App. 327, 332–33, 511 P.2d 1396, 1399–1400 (1973)). We agree with the following statement of the New Jersey Supreme Court:

It has been persuasively stated in a number of cases, in seeking a rationale that would duly balance the right of privacy against legitimate police safekeeping functions, that if the circumstances, that bring a vehicle properly to the attention of the police are such that its driver, even though arrested, is able to make his own arrangements for its custody, or if the vehicle can be conveniently parked and locked without constituting an obstruction of traffic or other public danger, the police should permit that action to be taken rather than impound it against the will of the driver and thereafter search it routinely.

*Slockbower*, 79 N.J. at 9, 397 A.2d at 1053-54.

The State has the burden of showing that a case falls within an exception to the constitutional rule prohibiting warrantless searches. *Bies v. State*, 76 Wis.2d 457, 463, 251 N.W.2d 461, 464 (1977). The State thus has the burden of showing that a vehicle has been lawfully impounded before it can rely on the inventory search exception.

On review of an order suppressing evidence, the findings of fact, if any, of the trial court will be sustained unless against the great weight and clear preponderance of the evidence. *Id.* at 469, 251 N.W.2d at 467. This court will, however, independently examine the circum-

stances of the case to determine whether the constitutional requirement of reasonableness is satisfied. *Id.*

In the present case, the State argues that the policy of the West Bend Police Department to impound every vehicle which is parked in a prohibited zone and whose driver is taken into custody and cannot arrange at that time for someone to pick it up is reasonable. The State argues that not allowing an arrested person to re-enter a car helps promote public safety and protect law enforcement officers. This is the only argument advanced by the State in support of the impoundment of the Callaway vehicle. We are not convinced.

The State does not explain why the arresting officer or the officer who drove the vehicle to the police department garage could not have driven it twenty feet to a legal parking zone. Driving the car twenty feet is clearly easier than driving it to the sheriff's department.

The State has failed to show that there was a reasonable police need for impounding the Callaway car. The State has not shown that the car was abandoned or endangering public safety or that impoundment was necessary to preserve evidence. Further, the State has not show that the police impounded the car pursuant to a statute or ordinance or that Callaway consented to the impoundment. We must conclude that the State has not met its burden. We agree with the trial court that the impoundment was unreasonable under the circumstances of this case.

Because we have concluded that the car was unlawfully impounded, we need not consider the State's argument that the trial court erred when it ruled that the search of the locked glove compartment was unreasonable. We point out, however, that the trial court made its ruling before the Wisconsin Supreme Court decision in *Prober*.

*By the Court.*—Order affirmed.