STATE of Wisconsin, Plaintiff-Respondent,†

v.

Marvin R. WILLIAMSON, Jr., Defendant-Appellant.

Court of Appeals

No. 81–1961–CR. *Submitted on briefs August 24, 1982.— Decided September 27, 1982.*
(Also reported in 325 N.W.2d 360.)

† Petition to review granted.

For the defendant-appellant the cause was submitted on the briefs of *Peter D. Goldberg,* assistant state public defender.

For the plaintiff-respondent the cause was submitted on the brief of *E. Michael McCann,* district attorney, and *Peg Tarrant,* assistant district attorney.

Before Decker, C.J., Moser, P.J., and Wedemeyer, J.

MOSER, P.J.   This is an appeal from a misdemeanor conviction for carrying a concealed weapon contrary to sec. 941.23, Stats. Pursuant to sec. 809.41(3), the chief judge ordered that the case be decided by a three-judge panel. We reverse.

On January 2, 1981, at approximately 2 a.m., Marvin R. Williamson, Jr. (Williamson) exited his home at 1020 West Center Street in Milwaukee, accompanied by a friend, Myles (phonetic) King (King). There was a police squad car parked next door in front of a tavern at 1016 West Center Street. The squad car's headlights were off but its rotating red lights were on. Two police officers were in the squad car completing a traffic citation.

King approached within approximately eight feet of the squad car and peered into the windows, while Williamson remained about fifteen to twenty feet west of the squad car. Police officer Charles Berard (Berard) told his partner to roll down the window and ask King what he was doing. King replied, "Huh?" Berard then asked King if he had ever been arrested, to which King replied, "Yes, carrying a gun." Berard then asked King if he was wanted at the time, to which King responded, "Yeah."

At that point, the officers exited their squad car. Williamson turned and started to walk away. Berard approached Williamson and said, "Hold up a second, chief." Berard then told Williamson to keep his hands away from his body and asked Williamson if he had any weapons on him. Williamson made no response so Berard patted him down and found a loaded .22 caliber revolver in his coat pocket. Williamson was arrested for carrying a concealed weapon.

On January 2, 1981, at the initial appearance, a criminal complaint was filed charging Williamson with carrying a concealed weapon. Williamson, appearing specially, moved to dismiss the complaint on sufficiency grounds. The trial court found that the complaint was sufficient and Williamson entered a not guilty plea.

On January 19, 1981, Williamson filed a motion to dismiss the complaint contending that the complaint failed to allege sufficient facts to constitute probable cause to believe that Williamson committed the crime charged and that the stop, search, seizure and arrest of Williamson were all unconstitutional. A motion to suppress the evidence (the gun) was also filed at this time.

On February 26, 1981, an evidentiary hearing was held on these motions. Following this hearing, briefs were filed, and a decision was rendered on July 8, 1981, denying the motion to dismiss the complaint. The trial court found that the stop and frisk was reasonable under the

*Terry v. Ohio*[1] factors. While the decision did not specifically state whether the evidence was to be suppressed, Judge Wells, to whom the case was later assigned, ruled that the July 8, 1981, decision also denied Williamson's motion to suppress.

On August 31, 1981, Williamson formally waived his right to a jury trial. Williamson and the State also stipulated to using the transcript of the February 26, 1981, evidentiary hearing for the trial to the court.

On September 2, 1981, after noting that the stop and frisk was proper under *Terry* and *State v. Flynn*[2] and that a .22 caliber revolver was found on Williamson, the trial court ruled that the "evidence was clearly sufficient" to find Williamson guilty of carrying a concealed weapon. The trial court sentenced Williamson on October 9, 1981. The sentence was stayed pending the outcome of this appeal.

The issues on appeal are: (1) whether the complaint was insufficient in this misdemeanor case because it failed to recite the facts of the underlying warrantless search and seizure; and, (2) whether the stop and subsequent frisk of Williamson were legal and constitutional.

## SUFFICIENCY OF THE COMPLAINT

Williamson argues that a complaint charging a person with a misdemeanor—carrying a concealed weapon—is jurisdictionally suspect if it does not state on its face the underlying facts supporting a warrantless stop and frisk so as to enable a defendant to attack the validity of stop, search, seizure and arrest at the initial appearance before the magistrate. We disagree.

In Wisconsin, the complaint must be a written statement of the essential facts constituting the offense

---

[1] *Terry v. Ohio,* 392 U.S. 1 (1968).

[2] *Id.; State v. Flynn,* 92 Wis. 2d 427, 285 N.W.2d 710 (1979).

charged.[3] The complaint must contain minimal factual disclosures underlying the charge, but those facts need not be independently documented or spelled out in the complaint.[4] It need not state an encyclopedic listing of all evidentiary facts, only essential facts, preferably concisely and certainly clearly, stating exactly what the defendant is alleged to have done.[5] It need only exhibit enough information to enable a detached and neutral magistrate to make the judgment that the charges are not capricious and are sufficiently supported to bring into play the further steps of the criminal process.[6]

When the sufficiency of a criminal complaint is challenged, the alleged facts in the complaint must be sufficient to establish probable cause, not in a hypertechnical sense, but in a minimally adequate way through a common sense evaluation[7] by a neutral magistrate making a judgment that a crime has been committed.[8] The magistrate need only be able to answer the hypothetical question: "What makes you think that the defendant committed the offense charged?"[9] It is sufficient if the complaint answers the following questions: What is the charge? Who is charged? When and where is the offense alleged to have taken place? Why is this particular person being charged? and, Who says so?[10]

The United States Supreme Court has mandated that because of the dangers inherent in police officers' street

[3] Sec. 968.01, Stats.

[4] *Jaben v. United States*, 381 U.S. 214, 224 (1965).

[5] *State ex rel. Evanow v. Seraphim*, 40 Wis. 2d 223, 229, 161 N.W.2d 369, 372 (1968).

[6] *Jaben, supra* note 4, at 224–25; *State ex rel. Cullen v. Ceci*, 45 Wis. 2d 432, 444, 173 N.W.2d 175, 179 (1970).

[7] *State ex rel. Evanow, supra* note 5, at 226, 161 N.W.2d at 370.

[8] *Id.* at 227, 161 N.W.2d at 371.

[9] *Jaben, supra* note 4, at 224; *State ex rel. White v. Simpson*, 28 Wis. 2d 590, 594, 137 N.W.2d 391, 393 (1965).

[10] *State ex rel. Evanow, supra* note 5, at 230, 161 N.W.2d at 372.

searches and seizures, with or without a warrant, there must be some form of preliminary determination by a neutral and detached magistrate establishing that the underlying search was facially antiseptic to warrant further criminal proceedings.[11] The Court noted, however, that this was not required to be accompanied by the full panoply of adversary safeguards—counsel, confrontation, cross-examination and compulsory process for witnesses.[12] It reasoned that, because the stakes are so high when an individual is detained, the detached judgment of a neutral magistrate is essential if the fourth amendment is to furnish meaningful protection from unfounded interference with liberty.[13] The Court held that the fourth amendment requires a judicial determination of probable cause for the warrantless search and seizure as a prerequisite to extended restraint of liberty following arrest.[14] The fourth amendment protections have long been applied to the states through the due process clause of the fourteenth amendment.[15]

Williamson argues that the *Gerstein*[16] case requires that the complaint set forth facts to justify the police action—stop and frisk. We disagree.

Nowhere in *Gerstein* does the Court hold that the complaint must state the underlying facts establishing the validity of a street search and seizure. It merely holds that there must be a preliminary determination by a neutral magistrate that the fourth amendment protections have been met.

The instant complaint reads in part as follows:

THE ABOVE NAMED COMPLAINING WITNESS BEING DULY SWORN SAYS THAT THE ABOVE

---

[11] *Gerstein v. Pugh,* 420 U.S. 103 (1975).

[12] *Id.* at 119–20.

[13] *Id.* at 114.

[14] *Id.*

[15] *Mapp v. Ohio,* 367 U.S. 643, 655 (1961).

[16] *Gerstein, supra* note 11.

NAMED DEFENDANT IN THE COUNTY OF MIL-
WAUKEE, STATE OF WISCONSIN,

on January 2, 1981, at 1016 W. Center Street, City of
Milwaukee, not being a peace officer, did go armed with a
concealed and dangerous weapon, contrary to Wisconsin
Statutes section 941.23 (1).

Upon conviction of this charge, a Class A Misdemeanor,
the maximum possible penalty is a fine of not more than
$10,000 or imprisonment for not more than 9 months or
both.

Complainant states he is a City of Milwaukee Police
Officer and makes this complaint based upon the follow-
ing:

Complainant further states that on January 2, 1981, at
1016 W. Center Street, City and County of Milwaukee,
State of Wisconsin, he searched the above defendant;
that at that time your complainant found concealed in
the right outer coat pocket of a coat that the defendant
was wearing a loaded .22 cal. revolver.

After reviewing the complaint here we determine that
it answers the following questions:

| | |
|---|---|
| What is the charge? | Marvin R. Williamson was carrying a concealed weapon in violation of 941.23, Stats. |
| Who is charged? | Marvin R. Williamson is charged. |
| When and where is the offense alleged to have occurred? | It occurred January 2, 1981, at 1016 West Center Street, Milwaukee, Wisconsin. |
| Why is this particular person being charged? | He was searched and a loaded .22 caliber revolver was found in his pocket. |
| Who says so? | Police officer Charles Berard. |

On January 2, 1981, the trial court made a common
sense evaluation of this complaint and found that the

complaint stated sufficient facts to arrive at the conclusion as to what was the crime charged, who committed it, when and where it was committed, why Williamson was charged and who said so. We are satisfied that this complaint meets all the constitutional prerequisites to establish the Wisconsin criteria for a sufficient complaint.[17] Accordingly, we hold that the instant complaint is sufficient.

## SUPPRESSION OF EVIDENCE

Williamson argues that the evidence the State used in his prosecution should be suppressed because the stop and subsequent frisk violated his constitutional rights. We agree.

On review of an order granting or denying the suppression of evidence, the findings of fact, if any, by the trial court will be sustained unless they are against the great weight and clear preponderance of the evidence. However, appellate courts will independently examine the circumstances of the case to determine whether the constitutional requirements of reasonableness are satisfied.[18]

The United States Supreme Court has long held that where a police officer lacks probable cause to arrest an individual but has reason to believe that such individual

[17] *State ex rel. Evanow, supra* note 5; *State ex rel. Pflanz v. County Court,* 36 Wis. 2d 550, 558–59, 153 N.W.2d 559, 563–64 (1967).

In *Pflanz* the majority declared that the complaint was insufficient for lack of source information because the complaint failed to identify the complainant as a person qualified to investigate and to form an opinion as to whether certain tax returns were fraudulent. This case is clearly distinguishable because here the complainant is identified as a police officer searching a person and finding a loaded .22 caliber revolver in his coat pocket.

[18] *State v. Callaway,* 103 Wis. 2d 389, 401–02, 308 N.W.2d 897, 903–04 (Ct. App. 1981).

may be involved in the commission of a crime, he may stop such person for questioning.[19] If there is also reason to believe that the individual stopped may be armed, the officer may conduct a limited pat-down search of the person's outer clothing for weapons.[20]

The test to determine whether the police officer's conduct was justified is an objective one. The Court stated in *Terry*:

[I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. The scheme of the Fourth Amendment becomes meaningful only when it is assured that at some point the conduct of those charged with enforcing the laws can be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances. And in making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search "warrant a man of reasonable caution in the belief" that the action taken was appropriate? Anything less would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches, a result this Court has consistently refused to sanction.[21] [Footnotes and citations omitted.]

In a companion case to *Terry*, the Court added:

The police officer is not entitled to seize and search every person whom he sees on the street or of whom he makes inquiries. Before he places a hand on the person of a citizen in search of anything, he must have constitutionally adequate, reasonable grounds for doing so. In the case of the self-protective search for weapons, he

[19] *Adams v. Williams*, 407 U.S. 143, 145 (1972); *Terry, supra* note 1, at 22; *State v. Williamson*, 58 Wis. 2d 514, 518, 206 N.W.2d 613, 615 (1973).

[20] *Adams, supra* note 19, at 146; *Terry, supra* note 1, at 27.

[21] *Terry, supra* note 1, at 21–22.

must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous.[22]

Wisconsin has adopted the position of the United States Supreme Court that if an officer is entitled to make a forcible stop and has reason to believe that a suspect is armed and dangerous, he may conduct a weapon search limited in scope to this protective purpose.[23] Our legislature has also codified the rules promulgated in *Terry*.[24] When presented with a *Terry* situation, courts must look to the surrounding circumstances to determine whether there is a reasonable basis for frisking or patting down a stopped citizen. One simple rule will not cover every situation.[25]

---

[22] *Sibron v. New York*, 392 U.S. 40, 64 (1968).

[23] *State v. Chambers*, 55 Wis. 2d 289, 198 N.W.2d 377 (1972).

[24] Sec. 968.24, Stats., provides:

Temporary questioning without arrest. After having identified himself as a law enforcement officer, a law enforcement officer may stop a person in a public place for a reasonable period of time when the officer reasonably suspects that such person is committing, is about to commit or has committed a crime, and may demand the name and address of the person and an explanation of his conduct. Such detention and temporary questioning shall be conducted in the vicinity where the person was stopped.

Sec. 968.25, Stats., provides:

Search during temporary questioning. When a law enforcement officer has stopped a person for temporary questioning pursuant to s. 968.24 and reasonably suspects that he or another is in danger of physical injury, he may search such person for weapons or any instrument or article or substance readily capable of causing physical injury and of a sort not ordinarily carried in public places by law abiding persons. If he finds such a weapon or instrument, or any other property possession of which he reasonably believes may constitute the commission of a crime, or which may constitute a threat to his safety, he may take it and keep it until the completion of the questioning, at which time he shall either return it, if lawfully possessed, or arrest the person so questioned.

[25] *Chambers, supra* note 23, at 296, 198 N.W.2d at 380.

At the February 26, 1981, evidentiary hearing, Berard testified that he stopped and frisked Williamson because: (1) when the police officers exited their car Williamson turned and started to walk away; (2) Williamson was acting suspiciously, as evidenced by his looking around when he exited his yard, his stopping when he saw the squad car and his monitoring of the police officers; (3) King had already admitted that there was an open warrant for his arrest for carrying a concealed weapon and Williamson was then with him; and, (4) visibility was poor because it was 2 a.m.

The trial court, in its memorandum decision, also added that the stop and frisk was justified because Williamson made a furtive movement and he failed to respond to a question asked by Berard.

After independently examining the circumstances surrounding the instant stop and frisk, we are of the opinion that Williamson's constitutional and statutory rights have been violated. We are not satisfied that Williamson's conduct was sufficiently suspicious to justify stopping him. Berard testified that Williamson turned and walked away when he exited his squad car. The trial court concluded that Williamson made a furtive gesture. We hold that these actions by Williamson were not enough to lead Berard to the conclusion that Williamson might be involved in the commission of a crime. The record reflects that Williamson stopped immediately upon being commanded to do so. We disagree with the trial court's finding that Williamson made a furtive gesture. This finding is not supported by any evidence in the record.

Berard testified that his stop of Williamson was also based on the following: Williamson was looking around and pointing to the squad car and the tavern as he exited his home, and Williamson was monitoring the squad car. We also disagree that these additional actions were sufficient to justify the stop. It is not unusual or suspicious

for a person's curiosity to be aroused upon seeing a squad car with its rotating red lights on, especially when one leaves his own home. Therefore, we determine that the stop of Williamson was unreasonable because Berard did not have specific and articulable facts to base this intrusion on.

Berard testified that he frisked Williamson because Williamson was with King who had previously been arrested for carrying a concealed weapon and because visibility was poor. The trial court, in its memorandum decision, added that the frisk was further justified because Williamson did not respond to Berard's question concerning whether Williamson was now carrying a gun.

We do not believe that Williamson's mere propinquity to King, who in the past had been arrested for carrying a concealed weapon, without more, justifies frisking him.[26] Nor do we believe that poor visibility was sufficient to justify the frisk. While the lateness of the hour may be a sufficient reason to frisk under proper circumstances,[27] it was not sufficient in this case. To so hold would place an unreasonable burden on a person's constitutional right to be free from unwarranted intrusions.

Lastly, the evidence does not support the trial court's finding that the frisk was justified because Williamson

[26] See *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979). In *Penister v. State*, 74 Wis. 2d 94, 100, 246 N.W.2d 115, 119 (1976), the supreme court concluded that a frisk of a person had to be based on more than the fact that a companion of the defendant had been searched and a weapon had been found on him. The court noted that it is the totality of the circumstances which must be viewed to justify a frisk.

[27] In *Flynn, supra* note 2, at 447, 285 N.W.2d at 719, the time of day was an important factor because there was no one else on the street and the defendant's companion matched the description of the man who had been seen breaking into the store and removing a rifle a short time before. Here, the officers had no previous information about Williamson or King, nor was it so late that the time by itself was enough to justify the frisk.

did not respond to Berard's question. Section 968.24, Stats., states that an officer may stop a suspicious individual and demand his name, address and an explanation of his conduct. Section 968.25, states that after a proper sec. 968.24 stop an officer may frisk an individual if he reasonably suspects that he is in danger of physical injury. The record reflects that Berard did not ask Williamson his name or address or for any explanation of his conduct. He merely asked if he was carrying a weapon and when Williamson did not respond he immediately frisked him. We determine that, under the facts of this case, this was not the proper procedure for a police officer to follow prior to a lawful frisk. Unless presented with exigent circumstances compelling an immediate frisk of the person, a police officer is not entitled to accost an individual and frisk him without following our statutory mandates. We believe that had Berard found out that Williamson was at his own residence, there would have been no reason to detain him further.

While we are mindful that police officers are not required to take unnecessary risks in the performance of their increasingly hazardous duties,[28] we conclude that a person of reasonable caution would not believe that Berard's actions were appropriate. We determine that Berard was not able to point to particular facts from which he reasonably inferred that Williamson was armed and dangerous. Accordingly, we hold that the trial court's findings of fact regarding the justification for the frisk are against the great weight and clear preponderance of the evidence and that under the facts of this case the search and the seizure were unreasonable.

*By the Court.*—Judgment reversed and cause remanded.

[28] *State v. Beaty,* 57 Wis. 2d 531, 539, 205 N.W.2d 11, 16 (1973).